[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Sharon Selkowitz, was born on September 11, 1943. She is 50 years of age and is in reasonably good health. The defendant, Jan Selkowitz, was born on January 17, 1944. He is 49 years of age and in reasonably good health. The parties married on February 10, 1972. There is one child born of this marriage, a son, David, whose birth date was March 4, 1979.
This action was filed in court on May 5, 1992. The parties have resided continuously in this state for at least twelve months before the filing of the complaint and in fact have resided in Connecticut since 1975. Both parties have appeared with counsel. Edward Nusbaum, Esq., has been appointed as attorney for the child and has submitted a report. CT Page 10897
 I.
AS TO THE DISSOLUTION OF THIS MARRIAGE:
The court finds it has jurisdiction over the parties and the subject matter of this marriage for purposes of this dissolution action. The parties each continue to reside in the marital home at 31 Buttonwood Lane, Darien, Connecticut: a house with five bedrooms and four and one-half baths. Nevertheless, they have been separated from one another in any marital relationship since at least April 1992. Each has testified that the marriage has broken down irretrievably and has signed and filed a written stipulation to that effect. The court is satisfied from the testimony of the parties and the stipulation they have signed that the marriage has broken down irretrievably.
It is therefore ordered that a decree of dissolution may enter based on irretrievable breakdown.
 II.
AS TO CUSTODY AND VISITATION:
Concerning the issue of custody of the child, David, the parties had agreed to accept and be bound by the recommendations of Attorney Edward Nusbaum. He filed a written report with the court containing recommendations predicated in part on the initial intent of the plaintiff, Sharon Selkowitz, to relocate to Atlanta, Georgia. During the hearing, Mrs. Selkowitz made it known that she had revised her plans and now intends to remain in Darien, Connecticut. Attorney Nusbaum then modified his recommendations to accommodate the new circumstances. The report was made after consultation with David and with Dr. Jerome Brodlie, a child psychiatrist who has been working with David. The recommendation by attorney Nusbaum is for joint custody, but that the present needs of David would best be met by his continued residence and schooling in Darien, with his father as the primary residential provider. The testimony of the parties, as well as their stipulation to adopt the report, has persuaded the court that it is appropriate to accept the recommendations of Attorney Nusbaum concerning custody and visitation.
It is therefore ordered as to custody and visitation that: CT Page 10898
1. The parties shall have joint custody of the minor child, David. However, he shall reside in Darien, Connecticut, and his principal place of residence shall be with the defendant-father.
2. The plaintiff and defendant shall confer and consult on all matters concerning David's health, education and welfare and each shall have authority to contact schools, doctors, dentists and other authorities concerning their child. In the event written authorization shall be required, the parties shall cooperate and provide such authorizations. Whenever either party shall take the child away from the home of the respective party with whom he is residing or visiting for more than one night, the party who has physical custody of the child at that time shall provide the other with the address and telephone number of the place where the child shall be, so as to allow telephone access to the child.
3. Both parties will have liberal access to David with David's determination as to when he wishes to be with his mother or father to be given significant weight.
4. As part of the liberal access to David, the plaintiff shall have David with her:
(a) Every Thanksgiving vacation;
(b) Every Christmas vacation through Christmas day, with David returning to his father after Christmas day for the balance of the vacation;
(c) Every Easter/spring vacation (the child shall spend every February/winter vacation with his father);
(d) Five-eighths (5/8) of David's time during the summer not taken up by camp or other activities that take David away from Darien.
 III.
In considering the issues of support for the child, division of property and alimony, the court has reviewed the requirements of General Statutes 46b-84, 46b-81 and 46b-82. Besides factors already discussed, the court finds the following to be relevant. CT Page 10899
These parties have been married over twenty-one years. At the time of the marriage, in 1972, the plaintiff had been employed as an airline flight attendant for 10 years. The defendant was employed in sales for a sportswear company.
The plaintiff continued as a stewardess for another year. She also completed her college education, earning a Bachelor of Arts degree from Hunter College in 1974. She also work for a brief period of time after the family's removal to Darien for the Darien Historical Society, receiving a nominal wage. Her only other employment outside the home was as a real estate salesperson for the period 1985 to 1988. In one year as a salesperson, she had an income of $23,417.00. The other years she lost money. Primarily, during the marriage she has devoted herself to being a homemaker and mother.
The defendant graduated from St. Lawrence University in 1966. He taught French in a prep school for one year. He then worked briefly for a pharmaceutical importer. In 1969, he went to work for Sportswear International, an importer of women's sportswear. He worked for that company for 18 years, achieving the title of vice-president of sales. His maximum salary with that company was $50,000.00.
In 1986, he left that company to start his present business. In that year, the defendant, in association with Alvin Doroshkin, established a corporation, Salem Straits, Ltd., to import inexpensive sportswear for women. Two other men, Lung Ka Sing and Benjamin S. Lung, are involved in the venture to provide letters of credit and to deposit collateral with factors. Their participation is limited and they derive no benefits from the corporation. The defendant and Mr. Doroshkin are the operating officers of the corporation and are the only members of the partnership to draw salary, bonuses and other benefits from the corporation. The defendant, in effect, is the salesman and negotiator for the corporation and Mr. Doroshkin is the finance, operations and office manager. The defendant has been continuously employed in that business to this date.
In 1972, when the parties married, the plaintiff had $3,000.00 in a savings account, some TWA stock and some furniture. Although the plaintiff recollects that the defendant informed her he had $10,000.00 at the time of the marriage. The defendant's recollection is that he brought between $20,000.00 CT Page 10900 and $30,000.00 to the marriage, including funds in his company's pension plan. Except for a $1,000.00 gift the plaintiff received upon her college graduation, neither party has received any gift, bequest or inheritance during the marriage. Except for the plaintiff's earnings as a flight attendant for one year and the single year income as a real estate salesperson, all of the family income and acquisition of assets is attributable to the efforts of the defendant. The defendant works hard at his trade, which requires a great deal of travel throughout the third-world in search of low-priced manufacturers as well as dealing with customers who, because of the recent business recession, have been cutting back on orders.
Although that recession has recently had an effect on the imported women's sportswear business, especially the low-end lines which are the specialty of Salem Straits, the defendant has prospered in his business. In 1986, his income was $70,000.00. By 1990, his income was $223,000.00. In 1991, his income did drop to $212,000.00 and then to $170,000.00 in 1992. Nevertheless, he has succeeded in accumulating substantial assets.
After renting apartments in New York, the couple purchased a home at 23 Richmond Drive, Darien, in 1975. They acquired their present home in December 1985.
It had been the plaintiff's earlier intention to relocate to Atlanta, establish a home for herself and David, and resume an educational program leading to a career in hospital administration, or occupational counseling, or even the law. At a minimum, she believes she needs initial computer training. Those plans have been modified as a result of the custody agreement. She now plans to continue residence in Darien and pursue her vocational training for entry into the job market here. As of the present time, she believes she has few job skills which would afford her more than a modest income.
The assets of the marriage, as far as the court can determine and as reflected in the affidavits of the parties, as well as the appraisals and stipulations submitted in evidence are as follows:
A. Real Estate at 31 Buttonwood Lane, Darien, Connecticut, with an estimated fair market value of $775,000.00 less a first mortgage of $68,834.10, to an equity of $706,165.90. CT Page 10901
B. Bank Accounts (the parenthetical notations represent the name in which the account stands: J = joint tenancy, W = wife; H= husband)
 Checking Accounts Chase Connecticut (J) $1550.20 Shawmut Bank (W) $556.34 Shawmut Bank (H) $2035.45 Chase Manhattan (H) $681.48 Total Checking $4823.47 Savings Accounts Chase Money Market (H) $38,270.40 Chase Money Market (H) $6,286.97 Shawmut Bank (W) $3,401.32 Total Savings $47,958.69 Total Bank Accounts $52,782.16
C. Securities Prudential Bache Portfolio (J) $31,500.00 Dean Witter Portfolio (J) $125,828.35 Hambrecht Quist Portfolio (J) $110,262.90 600 Shares Texas Meridian (H) $6,450.00 Herbert J. Sims Account (H) $20,484.49 Total Securities $294,525.74
D. Bonds City of New London (J) $10,000.00 CT Development Authority (J) $15,000.00 CT Development Elm Park Baptist (J) $10,000.00 CT Development East Hill Woods (J) $10,000.00 Groton CT General Obligation (J) $10,000.00 Ct. Development Duncaster (H) $10,000.00 Ct. Health and Educ. Facilities (J) $10,000.00 CT Housing Finance Authority (H) $10,000.00 CT Housing Finance Authority (J) $30,000.00 Total Bonds $115,000.00
E. Deferred Assets Dean Witter IRA (H) $183,624.60 Chase Manhattan IRA (H) $8,320.54 Prudential Retirement Acct (H) $188,156.49 Aetna Annuity (H) $50,688.97 Prudential IRA (W) $5,227.78 Chase Manhattan IRA (W) $8,319.80 Total Deferred Assets $444,338.18 CT Page 10902
F. Other Assets 25% Interest in Salem Straits (H) $145,050.00 Cash Surrender Value Life Ins. (H) $5,857.00 1988 Buick Century Wagon (W) $6,925.00 1991 Acura Legend (H) $28,050.00 Tokeneke Club Certificate (W) $2,050.00 92 Tax Refunds $10,449.00 Total Other Assets $198,381.00 Total All Assets $1,105,027.00
The defendant also lists the following life insurance policies on his affidavit: an Aetna policy with a face value of $100,000.00 with the cash surrender value indicated above; Berkshire Life $100,000.00 term; American Mayflower $250,000.00 term; Federal Kemper $500,000.00 term. In the Salem Straits, Ltd. business, the partners maintain a $300,000.00 key man policy.
Additionally, the plaintiff claims that the defendant made unauthorized cash payments, in defiance of an earlier court order, from family assets to a total of $69,161.00. The court has examined these payments and finds that most are either normal expenses in relation to the house, such as taxes and mortgage payments or payments against attorney Nusbaum's bill. However, of that total the defendant used $44,946.00 in payment against his attorney's fees. The plaintiff claims that at least this sum should be charged against the defendant in deciding any distribution of assets.
In addition, the defendant has established custodial accounts for the benefit of the child, David, in the total amount of $246,159.26.
The defendant has listed no liabilities on his financial affidavit. He claims in his affidavit monthly living expenses of $8,644.09. The plaintiff lists loans from her parents of $20,000.00 borrowed to pay toward attorneys' fees and $7,300.00 for living expenses. She claims a Visa charge account debt of $1,678.31 incurred for living expenses and a debt to Richard Proctor for appraisal of the value of Salem Straits, Ltd. and other professional services. She also lists a balance for attorneys' fees due of $33,898.10. She claims in her affidavit monthly living expenses of $8,965.60.
IV. CT Page 10903
By way of relief, the plaintiff proposes an equal division of the assets.
She requests that the jointly owned home in Darien be listed for sale immediately and the gross proceeds of such sale shall be divided equally between the parties after satisfaction of the first mortgage and closing costs.
Alternatively, she suggests that the defendant may elect to purchase the plaintiff's one-half interest in such property for a lump sum equal to one-half of the fair market value of the property less one-half of the balance due on the existing first mortgage. If the defendant elects this alternative, then the plaintiff requests that from and after the date of such purchase, the defendant shall be solely responsible for all expenses in connection with the house including without limitation the first mortgage, the real estate taxes, and all capital gains taxes which may become due and owing upon the ultimate sale of the house. She suggests that the defendant use the following assets to purchase the plaintiff's one-half interest in the house: Securities in the amount of $295,524.75, one-half the listed bonds to $57,500.00, and cash from the bank accounts toward the balance.
She proposes that the balance of the assets of the parties shall be equally divided in the Court's discretion and that the personal property shall be divided equally by agreement or else as mediated by the Family Relations Division of this court.
As to the funds held on behalf of the child, David, she proposes that the plaintiff and the defendant shall be each custodian of one-half of David's assets; that David's custodial funds be used for his private school and/or college education and for his support and maintenance to the extent needed.
As to alimony, she requests that the defendant pay to her until her death or remarriage the sum of $6,000.00 per month, and one-third of the defendant's gross income from all sources derived in excess of $165,000 per year, less one-third of all of the plaintiff's income from employment.
As to any life insurance, the plaintiff requests that the defendant transfer to her ownership of life insurance policies having a death benefit equal to one-half of the death benefit of CT Page 10904 all of the defendant's life insurance and designate the plaintiff as the primary beneficiary of all of his life insurance until her death or remarriage.
As to income taxes, the husband shall indemnify and hold the wife harmless with respect to any joint tax returns filed during the marriage.
As to debts, the defendant shall be solely responsible for all ordinary, regular and routine expenses incurred by the family through the date of the dissolution of the marriage. She also claims that since such debt was incurred due to the defendant's failure to provide the plaintiff with adequate support, the defendant shall promptly reimburse the plaintiff for the $7,300 debt owed by the plaintiff to her parents (not including funds borrowed for counsel fees).
As to counsel fees, provided the net worth of the family is equally divided, the plaintiff agrees that the parties shall share equally the expenses of the professionals involved in this matter.
 V.
In his claims for relief, the defendant requests that he and the minor child be entitled to the exclusive possession of the family home at 31 Buttonwood Lane, Darien, Connecticut.
As to alimony, the order should be that he pay to the plaintiff alimony in the sum of $2,500.00 per month. But that alimony should end upon the death of the defendant, the remarriage or death of the plaintiff, or September 1, 2003, whichever event shall first occur.
The defendant agrees to be entirely responsible for the support of the minor child in all respects.
The defendant proposes that he and the minor child be entitled to exclusive possession of the family home at 31 Buttonwood Lane, Darien, Connecticut. He proposes that the home be sold when the minor child graduates from High School. Upon the sale, the net proceeds should be divided equally. In the event this is ordered by the court and therefore the plaintiff is deprived of claiming that home as her principal residence for purpose of capital gain rollover, then the defendant and the CT Page 10905 plaintiff would be equally responsible for paying the federal and state capital gain income taxes caused to the plaintiff and therefore, the defendant would pay to the plaintiff 50% of such established capital gain tax upon the filing of the tax return of the plaintiff for the year in question. If the court were to, however, order an immediate sale of the home, then each party should be responsible for his or her respective capital gain tax repercussions without contribution from the other.
The defendant also requests that the parties immediately attempt to refinance the present "Smart Money" mortgage in which the principal is being amortized at a rate far greater than he believes the present cash flow requirements of the parties would allow at the time of a divorce. He urges that the parties should refinance the mortgage which is in the present amount of $68,471.32 to a new refinanced mortgage of $100,000.00 and that it should be a 30 year conventional mortgage at the current best interest rate. Any funds remaining from the refinancing after pay off of the present mortgage should be divided equally between the parties.
As to the eventual sale of the home, the defendant requests the plaintiff and the defendant multiple list the property for sale no later than February 15 of the minor child's senior year in high school. The plaintiff and defendant shall mutually agree on a listing price, sales price and the terms and conditions of sale. The parties shall consider the advice of the listing broker in order to attempt to come to a mutual agreement. In case of a dispute that cannot be resolved pertaining to the listing and/or selling price or any other condition for sale, the same shall be referred to this court, which would retain jurisdiction for said purpose.
He also requests that all joint assets, other than the home, be divided equally between the parties; that the plaintiff shall be entitled to keep her individual assets, free and clear of any claim by the defendant, and the defendant shall be entitled to keep his individual assets, free and clear of any claim by the plaintiff; that the plaintiff and the defendant divide the personal assets located within the home and to the extent they are unable to so agree, the issue of said division shall be referred to the Family Relations Office of this court for recommendation and in the event the matter is still in dispute, it shall be referred back to this court for binding resolution. CT Page 10906
As to life insurance, the defendant agrees he would provide $150,000 of life insurance on his life naming the plaintiff as beneficiary so long as the plaintiff was entitled to the receipt of alimony.
 VI.
In determining the issue of division of assets and alimony, the court is mindful that this is a marriage of 21 years. the parties did not request the court to attribute fault for the breakdown. the wife is 50 years of age and the husband will shortly be 50 years of age and both are in reasonably good health. They have achieved a comfortable station in life, living in an excellent neighborhood in Darien in a substantial home. The defendant is a successful and skillful business man with a good income, although his industry has shared in the general business downturn of recent years. He has been the party who has provided the income for the family and who has enabled the family to acquire the family assets. The plaintiff is a college educated woman who has devoted most of the years of the marriage to being a homemaker and mother. It is unlikely that she will be able to obtain employment as a flight attendant, the only employment she has had aside from her venture in the real estate sales business in which she had only limited success. Her current employability, absent additional vocational training, would seem to be limited to lower paying jobs. The likelihood of the plaintiff's future acquisition of capital assets and income is substantially less than that of the defendant. The court is, however, also mindful that the defendant has agreed to assume full responsibility for the support and maintenance of the minor child, David.
The court has considered the claims of the parties for suggested relief in the areas of division of property and alimony. The court is mindful that the defendant will be the parent providing the principle residence and support for David.
The court has considered the defendant's proposal that he had David continue to reside in the family home until David graduates from high school and that the house not be sold until that time. The court however believes that will not meet the needs of the plaintiff to establish, at the present time, her own residence adequate to provide decent accommodations for herself and David when he visits. CT Page 10907
The court has also considered the plaintiff's request that she remain in residence at the Buttonwood Lane house until it is sold. This arrangement has not proven successful to the present time. Attorney Nusbaum reports that the present arrangement has placed an emotional strain on David.
AS TO THE DIVISION OF PROPERTY:
The court therefore directs that the home at 31 Buttonwood Lane, Darien, Connecticut, shall be listed for sale immediately and the gross proceeds of such sale shall be divided equally between the parties after satisfaction of the first mortgage and closing costs. The plaintiff and defendant shall mutually agree on the listing price, sales price and terms and conditions of sale. If they cannot agree, a licensed real estate appraiser with an office in Darien, Connecticut mutually agreeable to the parties shall make a final and binding determination on all of the issues. If the parties cannot agree on such licensed real estate appraiser, the appraiser will be appointed by this court.
Until the sale of the house, the defendant-father and the child, David, shall be entitled to exclusive possession of the house. To effect this order, the plaintiff is directed to vacate the house as soon as possible, but in any event no later than January 30, 1994.
Until the house is sold, the defendant shall be responsible for all mortgage payments, property taxes and assessments, and all maintenance expenses.
The assets listed above as checking accounts, savings accounts, securities and bonds shall be divided equally, after the plaintiff receives a credit against these assets for $22,473.00 to offset one-half of the funds used by the defendant to pay towards his attorney's fees.
Mindful of the fact that this court will order indefinite alimony, the court orders that only so much of the assets listed above as deferred assets with a gross value of $444,338.18 as represents a proportion of $100,000.00 be transferred to the plaintiff. The court will issue a Qualified Domestic Relations Order, if it is necessary to achieve this transfer.
The court orders that the defendant retain his interest in Salem Straits, Ltd., free of any claim by the plaintiff. The CT Page 10908 plaintiff may retain the 1988 Buick Century Wagon. The defendant may retain the 1991 Acura Legend. The plaintiff may retain the Tokeneke Club Certificate. The 1992 Tax refund shall be divided equally between the parties.
AS TO SUPPORT OF THE MINOR CHILD:
The defendant husband shall be entirely responsible for the support of the minor child, David, in all respects. The parties have agreed to this provision in their claims for relief.
In respect to this issue, the defendant shall remain sole custodian of the custodial accounts established for David as listed on his financial affidavit, so long as these funds are used for the education, support and maintenance of the child as needed. The defendant will, however, supply the plaintiff with an annual accounting of these funds and any distribution made from the funds.
AS TO ALIMONY:
The court has considered the factors set forth in General Statutes 46b-81, most of which have been discussed above. The court is aware that the defendant has suggested that any alimony be terminated no later than 10 years from the date of dissolution. At that time, however, the plaintiff will be 60 years of age. In light of her limited vocational experiences, there is no assurance that, despite her best efforts at vocational retraining and efforts in the job market, she will be adequately self-supporting so as not to need any further assistance from the defendant, if he is then able to provide such assistance. The court therefore intends to order alimony without specific termination, aware that alimony may always be modified as needs, ability and circumstances change.
This order for alimony is based on the defendant's present income as indicated by the evidence presented during the hearing. The court is aware that the plaintiff's counsel may suspect the defendant's income has recently fallen as a result of the pendency of this action, but the court gives credit to the defendant's evidence that the market circumstances and his diminished effectiveness in contributing to the company is the primary cause for the recent reduction of income.
The court directs the defendant to pay to the plaintiff the CT Page 10909 sum of $4,000.00 per month by way of alimony. Upon the sale of the house and the distribution of the proceeds, this order shall be reduced to $3,500.00 per month. This order is retroactive to September 1, 1993.
The parties are directed to exchange in the future copies of their respective federal and state income tax returns within one month after filing.
AS TO PERSONAL PROPERTY:
The plaintiff and the defendant shall endeavor to divide the personal assets located within the home at Buttonwood Lane, Darien, Connecticut. To the extent they are unable to so agree, the issue of said division shall be referred to the Family Relations Office of this court for recommendation and in the event the matter is still in dispute, it shall be referred back to this court for binding resolution.
AS TO LIFE INSURANCE:
The defendant shall retain the life insurance policies listed on his financial affidavit, except that he shall provide $300,000 of life insurance on his life naming the plaintiff as principal beneficiary so long as the plaintiff is entitled to the receipt of alimony.
AS TO ATTORNEY'S FEES AND DEBTS:
In light of the distributions ordered above, each party shall be responsible for his or her own professional fees. Each party shall be liable for his or her own debts as listed on the respective affidavits.
CHRISTMAS VISITATION IN 1993:
Despite any order entered above concerning possession of the Buttonwood home pending the sale, the court directs that, unless the parties can agree to other arrangements, that the defendant remove himself from the home during the week ending December 25, 1993, so that the plaintiff may enjoy visitation with David at the home during the Christmas week.
NIGRO, J. CT Page 10910